Fleda F. Iversen v. Commissioner.
Iversen v. Commissioner
Docket No. 109258.
United States Tax Court
1943 Tax Ct. Memo LEXIS 406; 1 T.C.M. (CCH) 777; T.C.M. (RIA) 43124; March 13, 1943
*406 William Wallace Booth, Esq., 747 Union Trust Bldg., Pittsburgh, Pa., for the petitioner. Orris Bennett, Esq., for the respondent. LEECH
Memorandum Opinion LEECH, Judge: The Commissioner determined an income tax deficiency of $11,836.88 against petitioner for the calendar year 1937. The sole issue is whether stock sold by petitioner on June 8, 1937 had been held for more than 10 years within the meaning of section 117 of the Revenue Act of 1936. [The Facts] The petitioner is an individual who filed her income tax return for the calendar year 1937 with the collector of internal revenue for the Twenty-third District of Pennsylvania. The proceeding was submitted on a stipulation of facts and the pleadings. We find the facts as so stipulated and pleaded. Hereinafter are set forth only those facts deemed important to an understanding of the issue. George Mesta, president of Mesta Machine Company (hereinafter called the "Company") died testate on April 22, 1925. Pearl R. Mesta, his widow, elected to take against his will. F. E. Mesta, brother of George Mesta, succeeded him as president of the Company upon the latter's death. F. E. Mesta was the specific legatee of 500 shares of *407 the common stock of the Company under his brother's will. This amount was subsequently increased by a stock dividend of 48 1/2 shares. He was also a remainderman of 14/140ths of the residuary estate. The election of Pearl R. Mesta to take a dower interest accelerated the remainders and F. E. Mesta became entitled to receive a total of 1,500 shares. F. E. Mesta died on August 31, 1925 owning 89 shares of stock of the Company at that time. Cora L. Mesta, his widow, was the sole legatee under his will. Lorenz Iversen, on January 5, 1927, purchased 375 shares of stock of the Company from the Estate of George Mesta at $200 per share. Shortly before February 17, 1927, Iversen orally agreed with R. J. Dodds, counsel for Cora L. Mesta, as such and as executrix of the Estate of F. E. Mesta, to purchase 2,000 shares of stock at $260 per share. The terms were $120,000 in cash and the balance in 10 equal annual installments. This stock was retained as collateral but the purchaser was given the right to withdraw a certain percentage of the stock upon each installment payment. During this period a plan of recapitalization was under consideration by the management stockholders whereby preferred *408 and no par common would be exchanged for the outstanding common, which had a $100 par value. Pearl R. Mesta, in February 1927, expressed a willingness to transfer her common stock of the Company for preferred stock, both of which would be available after recapitalization. At that time the executors of the Estate of George Mesta had filed the final account and it was known that Pearl R. Mesta would receive 6,717 1/2 shares of old common stock of the Company. She already then owned 495 shares which made a total of 7,212 1/2 shares of the old stock of the Company that she either owned or would be entitled to receive upon distribution. The management stockholders of the Company, sometime in February 1927, definitely agreed upon a plan of recapitalization for the Company which then had only common stock, and without par value, outstanding. The plan provided that the Company issue preferred and no par common stock and exchange it for the outstanding common stock at the rate of one share of preferred and three shares of no par common for each outstanding share. Harry Wahr, president of the Company at that time, then entered into three contracts with Pearl R. Mesta on February 17, 1927. *409 He was acting for himself, the other management stockholders, and members of their families in so doing. The first contract stated that the Company proposed to recapitalize and that: * * * * *
Mrs. Mesta hereby agrees, as part of said readjustment, to deliver to Mr. Wahr 11,575 shares of no par value stock so to be created, and to accept in lieu thereof 5,787 1/2 shares of preferred stock so to be created, and Mr. Wahr agrees to procure said 5,787 1/2 shares of preferred stock and to deliver the same to Mrs. Mesta in place of the said 11,575 shares of no par stock. The parties hereto agree that the transaction shall be closed within 90 days from the date the decree of the Orphans' Court of Allegheny County, Pennsylvania, in the Estate of George Mesta, becomes final and conclusive, * * *. Pending the delivery of the shares to be delivered by Mrs. Mesta, she shall be entitled to receive any and all regular quarterly dividends, as declared, upon the shares of stock which she now holds. The second contract between Pearl R. Mesta and Harry Wahr recited that the prior one had also been entered between them on the same day. It stated that if the recapitalization were carried out, Pearl *410 R. Mesta would own 10,062 1/2 shares of no par common. It further stated in part: * * * * *
Mrs. Mesta agrees that if the said other and precedent agreement with Mr. Wahr shall by him be fully kept and performed she will sell, assign, and transfer to Mr. Wahr simultaneously with the performance of said other agreement the said 10,062 1/2 shares of no par stock for the consideration of $503,125.00 in cash, and Mr. Wahr agrees to purchase these shares at that price. * * * * *
The contract also required a down payment of $50,000 be made by Mr. Wahr and his associates, which was done. In the event either contract was not carried out, this sum was to constitute liquidated damages for the breach. Iversen contributed $15,000 of this amount. The third contract between Pearl R. Mesta and Harry Wahr was an escrow agreement to insure the performance of the other two. It stated that Pearl R. Mesta would deposit with the escrow agent 7,212 1/2 shares of the old $100 par value stock of the Company. This was stock she either owned or was entitled to receive from the estate of her deceased husband, George Mesta. The stock was to remain with the escrow agent for 90 days after the decree of *411 distribution from the Orphans' Court at which time it would be returned to her unless Wahr meanwhile performed his obligations under the other two contracts. It continued: THIRD. If within the said period of ninety (90) days the said Mesta Machine Company shall deliver to the said Union Trust Company [the escrow agent] certificates for 7212 1/2 shares and Mr. Wahr shall deliver to the said Union Trust Company 5787 1/2 shares of preferred stock created and distributed in conformity with the provisions of the agreement between Mrs. Mesta and Mr. Wahr hereto attached and Mr. Wahr shall pay to said Union Trust Company for account of Mrs. Mesta $453,125.00, then the shares of stock belonging to her deposited under the terms hereof shall become and be the property of Mr. Wahr and delivery thereof shall be made to him, and Mr. Wahr shall thereupon become entitled as attorney in fact for Mrs. Mesta to endorse the said certificates for surrender and cancellation or for exchange for no par stock which may be issued under the provision of the said agreements. * * * Prior to entering the first contract the stockholders, for whom Wahr was acting, agreed among themselves as to the contributions *412 of preferred stock each would make to fulfill the contract and the amount of no par common each would receive. Their names and the amounts of stock each was to give and receive are as follows: No. shares
No. shares
of new pfd.
of new com-
stock to be
mon to be
Name
contributed
received
Harry F. Wahr
865
1,730
Annie E. Wahr
(mother)
619 1/2
1,239
J. O. Horning
1,140
2,280
Marie M. Horning
(wife)
37
74
Ada Marie Connelly
(daughter)
25
50
Lorenz Iversen
2,444
4,888
F. A. Mesta
325
650
L. W. Mesta
332
664
Totals
5,787 1/2
11,575
Iversen owned only 444 shares of stock of the Company at the time this agreement was entered. Under the proposed recapitalization he would thereby have been entitled to only 444 shares of preferred which was far less than he was obligated to pay. He was only able to join this agreement by reason of his contract with Dodds to purchase 2,000 shares of old $100 par value common stock from Cora Mesta. The Orphans' Court of Allegheny County, Pennsylvania, on March 31, 1927, entered a decree permitting a distribution of stock to Pearl Mesta from the Estate of George Mesta. Accordingly, a distribution of 6,717 1/2 shares was *413 made to her on April 22, 1927. The stock was then deposited with the escrow agent pursuant to the contracts of February 17, 1927 between Pearl R. Mesta and Harry Wahr. The total stock so deposited by reason of this distribution and the previous deposits made by Pearl R. Mesta totaled 7,212 1/2 shares. These shares were released by the escrow agent to Pearl R. Mesta and Harry Wahr, jointly, on June 24, 1927. Pursuant to the same decree, the executors of George Mesta's estate, on April 22, 1927, distributed 2,043 1/2 shares of stock of the Company to the Estate of F. E. Mesta. Cora L. Mesta and Iversen, on April 26, 1927, carried out with slight variation the agreement they had orally entered during the preceding February. Instead of making the down payment of $120,000 to Cora L. Mesta as originally agreed, Iversen paid that sum on that date to the Estate of F. E. Mesta. He received from it certificates for 462 shares of the Company. The written contract they signed on April 26, 1927 recited that Cora L. Mesta was the sole legatee of F. E. Mesta's estate and would acquire at least 1,538 shares of the Company's stock from it. It also stated that the Company proposed to recapitalize *414 and issue new capital stock. It continued; Mrs. Mesta hereby agrees, as part of said readjustment, to deliver to Mr. Iversen one thousand five hundred thirty-eight (1,538) shares of said 6% cumulative preferred stock, so to be created, and to accept in lieu thereof four thousand three hundred eighty-six (4,386) shares of common stock, without nominal or par value, so to be created. * * * * *
Upon the said exchange of stock, Mrs. Mesta and Mr. Iversen further convenant and agree: Mrs. Mesta agrees to sell to Mr. Iversen nine thousand (9,000) shares of common stock, without nominal or par value, so to be created, of Mesta Machine Company for four hundred thousand ($400,000) dollars, payable in deferred. payments * * *. Iversen would acquire 2,000 shares of preferred stock after the recapitalization as a result of acquiring 462 shares of old stock by purchase from the Estate of F. E. Mesta and through the contract with Cora L. Mesta. He intended to exchange these shares with Pearl R. Mesta for 4,000 shares of no par common after recapitalization. The directors of the company, on April 12, 1927, passed a resolution to recapitalize according to the proposed plan and called a meeting *415 of the stockholders to approve it. The stockholders approved the plan on June 23, 1927 and the new stock was issued the following day. All the exchanges required by the several contracts were also made at that time when the new stock was issued. The petitioner acquired 50,000 shares of no par common on August 9, 1935 by prenuptial gift from Iversen. She sold 2,586 2/3 of these shares on June 8, 1937. The respondent determined that they had then been "held" less than 10 years within the meaning of section 117 (c) of the Revenue Act of 1936 and therefore taxed the capital gain therefrom at 40 per cent as provided by that section. [Opinion] The petitioner contends that when she sold this stock, it had been "held" by her for more than 10 years under the cited section. She argues that it was acquired by her husband on February 17, 1927, under the terms of three contracts between Pearl R. Mesta and Harry Wahr, that she acquired it by gift from her husband and is thus entitled to add his holding period to hers, that when she sold it on June 8, 1937 she had therefore "held" it for more than 10 years and that, accordingly, under section 117, supra, only 30 per cent of the gain *416 on the sale was taxable. The respondent concedes that the period the stock was held by petitioner's donor may be added to that of the donee in computing the period during which the stock was "held" under the cited section. But the respondent determined the contested deficiency on the ground and contends here that the stock was not acquired by Iversen until its issuance on June 24, 1927, following the recapitalization on the preceding day. This determination resulted in a holding period for petitioner, slightly less than 10 years, and thus justified the determination that 40 per cent of the gain on its sale was taxable under the controlling section. The holding period of property, under section 117, begins when its ownership is actually acquired. . The issue, therefore, is the date at which petitioner's donor, Iversen, acquired the stock, the taxable gain on the sale of which is in question. We think that the contracts entered on February 17, 1927 did not constitute completed sales or exchanges at the time they were made. The first agreement provided for the exchange of preferred stock for no par common. The *417 second one called for the sale of no par common. Neither of these stocks was in existence at the time the contracts were entered. True, the old $100 par value stock was outstanding at that time but the contracts do not provide for sale or exchange of shares of that stock. The delivery of the preferred and no par common required by the contracts could be made only after the corporate recapitalization. That could not and did not occur until it was authorized by the directors of the corporation on April 12, 1927 and was approved by the shareholders on June 23, 1927. Then, and not before, was there any such stock. Indeed, before that time no certainty could have existed that there would be. The prior oral agreement of the shareholders to recapitalize does not affect that conclusion. See ; ; ; Cyclopedia of Corp. (Fletcher), Vol. 13, Sec. 5781. We do not think that the parties intended the contracts to effect a completed sale or exchange before that time. The other provisions in the *418 contracts tend to support this view. The first contract plainly states that the transaction described therein shall not be closed at the time the agreement was entered. Moreover, Pearl R. Mesta is given the right to all dividends on stock which she held, pending the delivery of the shares which she is required to make. The sale for which the second contract provided was clearly executory at the time the contract was executed. Its performance was made contingent on the prior performance of the first agreement. A reading of the third or escrow agreement serves only to sustain our view that the parties did not intend a completed sale or exchange until after the recapitalization. The escrow agreement was to cease and the escrowed stock be returned to Pearl R. Mesta if Wahr failed to deliver the cash and the preferred stock, as provided in the first and second contracts, within 90 days after the decree of distribution of the Orphans' Court. The delivery of the preferred stock, obviously could not be made until after recapitalization. This did not occur until June 23, 1927, and the issues took place the next day. That, we think, was the date when Iversen, petitioner's donor, acquired the *419 stock. That date was less than 10 years before petitioner's sale of it. We sustain the respondent. Decision will be entered for the respondent.